IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 9, 2022 Session

## STATE OF TENNESSEE EX REL. SHAW ENTERPRISES, LLC v. TOWN OF THOMPSON'S STATION, ET AL.

Appeal from the Chancery Court for Williamson County
No.   19CV-48498B       Michael Binkley, Chancellor

_____

### No. M2021-00439-COA-R3-CV
_____

This is a declaratory judgment action in which the plaintiff developer objected to the defendant town's enforcement of a new energy code after the developer received preliminary plat approval.  The trial court granted summary judgment in favor of the defendant town.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Paul J. Krog and Nicholas D. Bulso, Brentwood, Tennessee, for the appellant, State of Tennessee ex rel. Shaw Enterprises, LLC.

Laura Adams Hight, Brentwood, Tennessee, for the appellees, Town of Thompson's Station and Wendy Deats.

## OPINION

## I.  BACKGROUND

In May 2015, MBSC Bridgemore, LLC ("Bridgemore") obtained approval of a preliminary plat for a segment of residential development in Thompson's Station ("the Town"), known as Bridgemore Village Phase 5.  Shaw Enterprises, LLC ("Plaintiff") purchased the property from Bridgemore in August 2015.  At the time of the plat approval in 2015, the Town's municipal ordinance required adherence to the 2009 International

Energy Conservation Code ("Energy Code") and the 2009 International Residential Building Code ("Building Code"). The Town adopted the 2015 Energy Code in 2018. When Plaintiff applied for its building permits, the Town required adherence to the 2015 Energy Code pursuant to the current municipal ordinance, increasing the building cost at a rate of approximately $6,000 per lot.

Plaintiff filed this action[1] against the Town and Wendy Deats, the Town Planner,[2] to obtain compensatory damages for the increased cost as result of the Town's refusal to allow development pursuant to the 2009 Energy Code. Plaintiff reasoned that it obtained a vested property right at the time of the preliminary plat approval, allowing adherence to the 2009 Energy Code pursuant to Tennessee's Vested Property Rights Act, codified at Tennessee Code Annotated section 13-4-310(b), which provides, in pertinent part, as follows:

> (b) A vested property right shall be established with respect to any property upon the approval, by the local government in which the property is situated, of a preliminary development plan []. During the vesting period described in subsections (c) and (d), the locally adopted development standards which are in effect on the date of approval of a preliminary development plan . . . shall remain the development standards applicable to that property or building during the vesting period.

The Town acknowledged that Plaintiff obtained a vested property right in the development standards as reflected in the 2009 Building Code when Plaintiff purchased the property with preliminary plat approval in 2015. The Town disagreed that the development standards included the 2009 Energy Code. The Town further argued that Plaintiff failed to raise a cognizable claim for relief and, in the alternative, that it was immune from suit pursuant to the Governmental Tort Liability Act. The Town moved for summary judgment.

Following a hearing, the trial court did not rule upon the Town's claimed immunity. Instead, the court held that Plaintiff never obtained a vested right in the 2009 Energy Code because it was not a development standard within the meaning of the statute. This appeal followed the denial of post-trial motions.

---

[1] Plaintiff originally sought mandamus relief that later became moot when Plaintiff decided to proceed with development in accordance with the 2015 Energy Code.

[2] Ms. Deats was dismissed from the action without objection.

## II. ISSUE

The sole dispositive issue on appeal is as follows: Whether the trial court erred in its interpretation of the pertinent code sections, finding in favor of the Town.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

To the extent that the issue raised in this appeal requires us to interpret and apply statutes, we note that statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)). The principles of statutory interpretation are well established. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

## IV. DISCUSSION

The parties agree that Plaintiff obtained vested property rights in the locally adopted development standards as reflected in the Building Code at the time of the approval of the preliminary development plan pursuant to Section 13-4-310(b). The term "development standards"

> (A)    Means all locally adopted or enforced standards, regulations or
> guidelines applicable to the development of property, including, but not

limited to, planning; local storm water requirements, layout, design; local construction standards for buildings, streets, alleys, curbs, sidewalks; zoning as provided for in subsection (g); lot size; lot configuration; yard dimensions; and off-site improvements, including public or private infrastructure, in which an applicant may acquire vested rights or vested property rights according to this section; and

(B)     *Does not* include standards required by federal or state law; or building construction safety standards which are adopted pursuant to authority granted under § 68-120-101[.]

Tenn. Code Ann. § 13-4-310(k)(4) (emphasis added).  The parties further agree that the 2009 and 2015 Energy Codes are building construction safety standards.

The issue at hand is whether the Energy Codes were adopted pursuant to authority granted under 68-120-101, entitled "Construction Safety Standards," thereby allowing the Town to require adherence to the new standard.  Section 68-120-101 provides, in pertinent part, as follows:

(a)     The state fire marshal shall, in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, promulgate rules establishing minimum statewide building construction safety standards. Such standards shall be designed to afford a reasonable degree of safety to life and property from fire and hazards incident to the design, construction, alteration and repair of buildings or structures.  The standards:

(1)     Shall include, but not be limited to, provisions relative to structural strength and stability; *energy efficiency*; means of egress; fire resistant ratings and requirements; and fire protection equipment and materials [and]

(2)     May be selected wholly or partially from publications or amended versions of publications of nationally recognized agencies or organizations, such as the International Code Council, Inc. . . .

(Emphasis added.).  As pertinent to this appeal, the Town rejected the minimum safety standards and adopted its own building construction safety standards in compliance with Subsection (b)(2) of Section 68-120-101, which provides, in pertinent part, as follows:

(b)(2) [The minimum standards] do not apply to any building . . . located within the jurisdiction of a local government that certifies in writing to the state fire marshal that

(A)    The local jurisdiction has chosen to adopt and enforce building construction and fire safety codes for construction of all buildings, for construction of all buildings . . . ; and

(i)    For one-family and two-family construction, it has adopted the International Residential Code, published by the International Code Council, Inc. . . ; and

* * *

(B)    It is adequately enforcing its code and performing any reviews of construction plans and specifications and inspections required by the state fire marshal under this section.

Plaintiff asserts that Section 68-120-101(b)(2) only provides the authorization for the State Fire Marshal to adopt building construction safety standards or, as in this case, an energy code.  Plaintiff explains that the statute merely describes the process by which a municipality may adopt an energy code and the resulting impact of a municipality's decision but does not provide the municipality with the authority to actually adopt the code. Plaintiff suggests that the Town's authority to adopt the code was actually derived from a different statute entirely, namely Section 6-54-501, *et seq.*, which provides, in pertinent part, as follows:

Any municipality is hereby authorized to adopt by reference any code or portions of any code as defined in § 6-54-501, without setting forth such codes in full; provided, that at least one (1) copy of the code that is incorporated or adopted by reference is filed in the office of the clerk or recorder of the municipality and is kept available for public use, inspection, and examination.

Tenn. Code Ann. § 6-54-502(a).  Plaintiff argues that only those standards adopted by the Fire Marshall are exempt from vesting pursuant to the plain language of Section 13-4-310(k)(4) because the Town's authority is derived elsewhere.  The Town responds that Plaintiff's claimed interpretation would yield an absurd result inconsistent with legislative intent to exempt building construction safety standards in general, whether adopted by the State Fire Marshall or the municipality.

Plaintiff asserts that its interpretation of the pertinent code sections is further bolstered by Section 13-4-310(g)'s safety provision whereby a local government may impose a new development standard in contravention of a vested property right based upon a determination that

a  compelling,  countervailing  interest  exists  relating  specifically  to  the

development plan or property which is the subject of the building permit that seriously threatens the public health, safety or welfare of the community and the threat cannot be mitigated within a reasonable period of time . . . by the applicant using vested property rights.

Tenn. Code Ann. § 13-4-310(g)(1)(B).

We applaud Plaintiff for its well-reasoned and researched argument and agree that the Town gained its general authority to adopt building codes from Title 6 and that Section 13-4-310(g) is an effective fail safe should any properly vested standards become severely deficient. However, we ultimately disagree with Plaintiff's interpretation of the pertinent code sections. Our plain reading of Section 68-120-101 leads us to conclude that the legislature provided the State Fire Marshall with the specific authority to promulgate building construction safety standards, while also simultaneously providing the local municipality with similar authority to reject such standards and adopt its own, more stringent standards.[3] We believe this authority given to the municipality is in addition to its general code-making authority found in Title 6. Accordingly, we hold that the Town did not violate Plaintiff's vested property rights by enforcing compliance with the 2015 Energy Code when it adopted its Energy Codes pursuant to the authority granted by the legislature in Section 68-120-101. The trial court did not err in its grant of summary judgment on this basis.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, State of Tennessee ex rel. Shaw Enterprises, LLC.

_____
JOHN W. MCCLARTY, JUDGE

---

[3] In so holding, we must address Plaintiff's claim at oral argument that Section 68-120-101(b)(7)(G) specifically disallows this interpretation by stating that "this section neither grants nor removes local government authority to promulgate provisions under home rule charters, private acts, or general state law." Subsection -101(b)(7)(G) refers to a municipality's ability to adopt a code pertaining to construction materials by ordinance or resolution through a majority vote unless prohibited by local law. This subsection is inapplicable to the issue before this court.